# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ruben Castillo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 6232 | **DATE** | 8/23/2000 |
| **CASE TITLE** | Inquote Corporation, et al. vs. Robert J. Cole | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Plaintiffs' motion for judgment on the pleadings [20-1] is denied as to Cole's breach of oral contract, fraud and quantum meruit claims. The court dismisses Cole's interference with contractual advantage claim against unnamed defendants without prejudice.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| ☐ | No notices required, advised in open court. | | **Document Number** |
| ☐ | No notices required. | number of notices | |
| ☐ | Notices mailed by judge's staff. | AUG 2 4 2000 | |
| ☐ | Notified counsel by telephone. | date docketed | 34 |
| ✓ | Docketing to mail notices. | IS | |
| ☐ | Mail AO 450 form. | docketing deputy initials | |
| ☐ | Copy to judge/magistrate judge. | | |
| RO | courtroom deputy's initials | ED-7 FILED FOR DOCKETING 00 AUG 24 AM 8: 21 | date mailed notice |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| INQUOTE CORPORATION, an Illinois Corporation, and LOCK L. LEE, an Illinois citizen, ) ) ) ) | |
| Plaintiffs, ) ) | Case No. 99 C 6232 |
| v. ) ) | Judge Ruben Castillo |
| ROBERT J. COLE, a California citizen, ) ) ) ) | |
| Defendant. ) | |

DOCKETED AUG 2 4 2000

## MEMORANDUM OPINION AND ORDER

**A. Procedural History**

On September 22, 1999, InQuote Corporation and Lock L. Lee filed a complaint in this Court, seeking declaratory judgment that a "Memorandum of Understanding," ("MOU"), regarding a business venture with Robert J. Cole, had been properly terminated; no partnership ever existed; and no money was owed by either party to the other. On October 19, Cole filed a motion to dismiss for lack of personal jurisdiction over him, which we denied. On that same date, however, we dismissed the action without prejudice, relying in part on the MOU's Limitation of Liability, which appeared to preclude InQuote and Lee's request for declaratory judgment.

On December 2, Cole filed a complaint against InQuote, Lee and unknown defendants in California state court. Lee removed the case to federal court in California. Subsequently, the case was transferred to the Northern District of Illinois and, on May 31, 2000, the case was assigned to Judge George W. Lindberg. On June 22, we granted

34

InQuote and Lee's motion for reactivation of this action, as well as their motion to transfer the case from Judge Lindberg to this Court. InQuote and Lee now bring a motion for judgment on the pleadings, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

**B. Relevant Facts**

Lee and InQuote are engaged in creating and developing proprietary software applications for the automobile industry, particularly using the Internet to manage the selling and procurement of automobiles and automobile parts inventories. In 1996, Lee approached Cole, a businessman experienced in marketing computer and Internet applications, about a computer application for marketing automobiles over the Internet. Following periodic discussions between Cole and Lee over the next three years about this technology, in April 1999, Lee talked to Cole about becoming a partner and/or shareholder in Lee's business, InQuote.

On June 4, 1999, Cole and Lee executed the MOU, which reflected a Statement-of-Intent to conduct further negotiations to finalize all material terms to be established in a written Partnership Agreement. The MOU specified that any agreement drafts and other communications prior to executing a Partnership Agreement were considered only preliminary and would have no legal effect unless subsequently incorporated into a Partnership Agreement. Cole would contribute his marketing expertise and personal contacts within the hi-tech and venture-finance communities in developing a business plan and market-entry strategy for InQuote. In return, Cole potentially would receive a 10% equity interest in InQuote, as well as other compensation. The MOU also set forth a "Limitation of Liability," which stated that neither party could make a claim against the

2

other party for damages resulting from the continuation or termination of negotiations. The MOU was in effect as of June 4, 1999 and until either party terminated the negotiations in writing, or until the MOU was superseded by the execution of a Partnership Agreement. The parties also agreed that Illinois law would govern interpretation of the MOU, without regard to the laws governing conflicts of law.

Following execution of the MOU, Cole and Lee continued their ongoing discussions and met several times in California to discuss development and marketing of InQuote's technology. On August 22, 1999, Cole first learned that InQuote's technology and his own involvement would only be limited to the automobile industry; he claims Lee never before had specified such a limitation. A few days later, Cole contacted Lee by letter to demand the transfer of 10% in InQuote stock, claiming that he had substantially performed his duties under the MOU and was due the compensation as stipulated in the MOU. Lee, however, failed to transfer Inquote stock to Cole, and instead, on September 22, 1999, informed Cole that he was repudiating the MOU and any obligation to compensate Cole.

Cole filed suit in a California state court, alleging: (1) breach of oral contract; (2) fraud; (3) quantum meruit; and (4) interference with contractual advantage. After removal and subsequent transfer to this Court, Cole filed an amended counterclaim, in which he sought to add factual allegations to support his fraud claim and add a claim for breach of the MOU. We granted the motion as to the additional facts, but denied Cole's

request to add his additional claim.[1] We now consider Inquote and Lee's Motion for Judgment on the Pleadings.

## ANALYSIS

### A. Standard of Review

A party can move for judgment based on the pleadings alone. *Northern Indiana Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 452 (7th Cir. 1998). Rule 12(c) provides the standard to be applied on a motion for judgment on the pleadings:

> After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

Fed. R. Civ. P. 12(c).

In this case, the parties have not presented material outside of the pleadings. Therefore, this motion for judgment on the pleadings is subject to the same standards as a Rule 12(b)(6) motion to dismiss: all well-pleaded facts are taken as true, all inferences are drawn in favor of the nonmovant, and all ambiguities are resolved in favor of the nonmovant. *Alexander v. City of Chicago*, 994 F.2d 333, 336 (7th Cir. 1993). "A motion for judgment on the pleadings may be granted only if the moving party clearly establishes that no material issue of fact remains to be resolved and that he or she is entitled to

---

[1] The MOU makes clear that it was only a statement of intent to conduct further negotiations, *i.e.* all negotiations were only preliminary and not binding. In addition, under the MOU's Limitation of Liability, the parties agreed not to sue each other if negotiations broke off. Thus, the express terms of the MOU preclude Cole's claim for breach of written contract.

4

judgment as a matter of law." *National Fidelity Life Ins. Co. v. Karaganis*, 811 F.2d 357, 358 (7th Cir. 1987).

**B. Fraud**

Cole's complaint adequately alleges the elements of fraud under either California or Illinois state law.[2] Under either forum's law, the elements of fraud are: (1) misrepresentation of a material fact; (2) knowledge of falsity; (3) intent to induce reliance; (4) justifiable reliance; and (5) resulting damage. *City of Atascadero v. Merrill Lynch*, 80 Cal. Rptr. 2d 329, 354 (Ct. App. 1998); *Anderson v. Deloitte & Touche LLP*, 66 Cal. Rptr. 2d 512, 515 (Ct. App. 1997); *Williams v. Wraxall*, 39 Cal. Rptr. 2d 658, 664 n.9 (Ct. App. 1995); *Simon v. Wilson*, 684 N.E.2d 791, 798 (Ill. App. Ct. 1997); *Barille v. Sears Roebuck & Co.*, 682 N.E.2d 118, 122-23 (Ill. App. Ct. 1997). Cole has asserted each of these elements in his complaint. First, Cole alleges that Lee knowingly made a number of untrue representations to him, including: "Lee and Inquote were owners and/or assignees of patent rights to computer technology which could be used in managing commercial data and marketing properties over the internet"; "technology of which Lee and Inquote were the owners and/or assignees could be used for managing all manner of commercial data and marketing all manner of properties"; and "Cole would be given a ten percent equity interest in Inquote in exchange for his work for Inquote." (Cole's Am. Countercl. at ¶ 22.) In addition, Cole asserts that Lee intended for him to rely on, and in

---

[2] Neither party addresses the choice of law question. Although, at this point, there does not appear to be a conflict of law, the parties may wish to brief the choice of law question should it become an issue in the future.

5

fact Cole did justifiably rely on, Lee's representations. As a result, Cole argues, he suffered damages.

In their motion for judgment on the pleadings, Inquote and Lee argue that Cole did not adequately plead justifiable reliance. We disagree. Under either California or Illinois law, justifiable reliance is found where "circumstances were such to make it reasonable for plaintiff to accept defendant's statements without an independent inquiry or investigation." *Wilhelm v. Pray, Price, Williams & Russell*, 231 Cal. Rptr. 355, 358 (Ct. of App. 1986); *see Teamsters Local 282 Pension Trust Fund*, 839 F.2d 366, 371 (7th Cir. 1988) ("crucial question is whether the plaintiff's conduct was so unreasonable under the circumstances and in light of the information open to him, that the law may properly say that this loss is his own responsibility") (internal quotations omitted); *Chrysler Credit Corp. v. Anthony Dodge, Inc.*, No. 92 C 5273, 1995 WL 493436, at *3 (N.D. Ill. Aug. 15, 1995) (party only has duty to investigate further when circumstances reasonably require investigation).

In this case, we find that Cole has adequately alleged facts to show his justifiable reliance on Inquote and Lee's representations. In the five years prior to executing the MOU, "Cole and Lee transacted between $250,000 and $300,000 in auto business . . . . Cole found [] Lee's statements regarding these business matters to be accurate and reliable." (Cole's Am. Countercl. at ¶ 6.) In addition, Cole alleges that he asked for copies of Inquote's business records but Lee never provided him the documents. Furthermore, Cole explains that he did not have equal access to information concerning Inquote's corporate business records because Lee controlled access to those records.

6

Thus, taking all the facts in the light most favorable to Cole, we find that he could prevail on his fraud claim and deny Inquote and Lee's 12(c) motion.

Inquote and Lee raise the MOU's Limitation of Liability as a bar to this action. That section provides that "[n]either party will make a claim against, or be liable to, the other part [sic] or its affiliates or agency for any damages, including (without limitation) lost profits or injury to business reputation, resulting from the continuation or abandonment of negotiations." (*Id.* at ¶ 38 (citing MOU at ¶ 6).) This provision, however, does not preclude a fraud claim. In Illinois, exculpatory agreements cannot insulate a party against responsibility for fraud. *Time Warner Sports Merchandising v. Chicagoland Processing Corp.*, 974 F. Supp. 1163, 1175 (N.D. Ill. 1997); *Zimmerman v. Northfield Real Estate, Inc.*, 510 N.E.2d 409, 415 (Ill. App. Ct. 1987) (exculpatory clause does not "protect persons from the results of their wilful and wanton misconduct") (citations omitted).

Inquote and Lee argue that because the Limitation of Liability at issue is a two-way street, *i.e.* both parties are precluded from suing the other, it does not qualify as an invalid exculpatory agreement, as defined in Black's Law Dictionary: "[a] contract clause which releases *one* of the parties from liability for his or her wrongful acts." Black's Law Dictionary 566 (6th ed. 1990) (emphasis added). That narrow reading of exculpatory agreement is, at best, only weakly supported by Black's definition, and Inquote and Lee do not provide any caselaw to directly support their argument. Instead, they list cases discussing exculpatory agreements in which only one party's liability is limited and leap to the conclusion that only contracts that limit liability of one party qualify as exculpatory agreements.

7

In California, as well, all contracts that "exempt anyone from responsibility for his own fraud . . . are against the policy of the law." *Lund v. Bally's Aerobic Plus, Inc.*, 93 Cal. Rptr. 2d 169, 172-73 (Ct. App. 2000) (citing Calif. Civ. Code § 1668). This rule likewise is not restricted solely to contracts limiting liability only for one party's fraudulent representations. Thus, the Limitation of Liability in the MOU does not preclude Cole's fraud claim.[3]

**C. Quantum Meruit**

Inquote and Lee argue that the MOU's Limitation of Liability precludes Cole's quantum meruit claim. However, if Cole can prove fraud, the MOU would not govern the relationship between the parties and recovery for unjust enrichment is possible. Thus, we deny Inquote and Lee's 12(c) motion as to Cole's quantum meruit claim.

**D. Interference with Contractual Advantage (Does 1-10)**

We dismiss this claim against unnamed defendants without prejudice. Cole has had ample time during the course of litigation to proceed with discovery to ascertain the defendants' identities but has failed to do so. Cole is free to file an amended complaint realleging this claim if he determines, after discovery, that the claim is likely to have evidentiary support.

---

[3] If Cole ultimately prevails on his fraud claim, the written MOU would be invalid and a determination on his oral contract claim, *i.e.* Count I, will have to be made. Thus, we deny Inquote and Lee's motion for judgment on the pleadings as to Cole's oral contract claim.

8

## CONCLUSION

For these reasons, we deny Inquote and Lee's Motion for Judgment on the pleadings as to Cole's breach of oral contract, fraud and quantum meruit claims. (R. 20-1.) We dismiss Cole's interference with contractual advantage claim against unnamed defendants without prejudice.

**ENTERED:**

Judge Ruben Castillo
**United States District Court**

**Dated: August 23, 2000**

Minute Order Form (06/97)

## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Suzanne B. Conlon | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 8332 | **DATE** | 8/23/2000 |
| **CASE TITLE** | Evans vs. Henderson | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Defendant's motion for leave to file reply brief instanter

**DOCKET ENTRY:**

(1) ■ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Defendants' motion for leave to file reply brief instanter is moot.

*Suzanne B. Conlon*

(11) ☐ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | AUG 24 2000 date docketed | |
| ✓ | Docketing to mail notices. | FILED FOR DOCKETING | IS docketing deputy initials | 28 |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | 00 AUG 23 PM 6: 43 | | |
| SB | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |